|  |  |
|---|---|
| **Via ECF Filing (with Courtesy Copy to the Court)** | Eric M. Creizman<br>Direct: 212.351.4021<br>Fax: 212.351.6221<br>ECreizman@gibsondunn.com |
| February 8, 2011 | Client: T 20303-00014 |

The Honorable Nicholas G. Garaufis
United States District Court Judge
United States District Court
for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  United States v. Mark Thompson, 10-CR-687 (NGG) (E.D.N.Y.)

Dear Judge Garaufis:

     I represent Mark Thompson as his court-appointed counsel in the above-referenced matter.  I respectfully submit this letter as an application to correct Mr. Thompson's January 13, 2011 sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure or, in the alternative, as a petition for a writ of error *coram nobis*.[1]  Mr. Thompson learned only yesterday that the Bureau of Prisons ("BOP") has calculated his release date to occur in July, 2011.  The Court plainly did not anticipate that he would be released from prison as late as July and specifically fashioned its sentence to avoid such a late release.  The Court's sentence was based on erroneous facts presented to the Court about the BOP's procedures in calculating undischarged terms of sentences.  Accordingly, we respectfully request a corrected sentence to reflect the Court's intended sentence, and, if the Court agrees, Mr. Thompson's immediate release from custody of the BOP.

     Mr. Thompson was sentenced by this Court on January 13, 2011.  At the time, the government, the Court, and the defense were all of the understanding that the BOP would credit towards his sentence on the escape charge the previous eleven months he had served in state and federal custody.  As the government stated in open court, based on discussions with the BOP, the BOP would credit:  (i) six of Mr. Thompson's nine months in state custody

---

[1] If this Court should find that Mr. Thompson's sentence cannot be amended pursuant to Rule 35 of the Federal Rules, then it should amend Mr. Thompson's sentence pursuant to a writ of error *coram nobis*.  *Coram nobis* relief is available where "(1) there are circumstances compelling such action to achieve justice; (2) sound reasons exist for failure to seek appropriate earlier relief; and (3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *Fleming v. United States*, 144 F.3d 88, 90 (2d Cir. 1998).

The Honorable Nicholas G. Garaufis
February 8, 2011
Page 2

from November 2009-August 2010, and (ii) the five months he had served in federal custody from August 2010-January 2011.  *See* Tr. of 1/13/11 Hr'g ("Tr.") at 19-20.[2]  As the Court said, "Five and six is eleven.  So even if I give him the maximum he would only serve another three months [of the agreed-upon guidelines of 8-14 months]." *Id.* at 20.

     After hearing oral argument, the Court initially sentenced Mr. Thompson to eleven months in prison on his escape charge -- which everyone understood he had already been credited -- to run consecutive to any undischarged term of imprisonment, to be calculated by the BOP.  Tr. at 25.  The Court plainly had in mind that the undischarged term the BOP would calculate would be no more than "another couple of months."  Tr. at 27.

     Assistant United States Attorney Amir Toosi advised that he anticipated that the BOP's calculation of Mr. Thompson's undischarged term plus his likely loss of good time would cause Mr. Thompson "probably [to] be released in July"[3]  Your Honor responded that "I don't want him released in July.  I thought it was another couple of months.  He should get credit.  He needs to get  to get credit." *Id.*   The Court made clear that he would sentence Mr. Thompson concurrently to avoid the six months of extra time he would face in prison if the sentences ran consecutively:  "I'm going to change.  I'm going to sentence him concurrently and not consecutively to the eleven months, all right, then you figure it out." *Id.*  The Court made clear to Mr. Thompson that changing the sentence from consecutive to concurrent was meaningful and designed to achieve Mr. Thompson's release in the very near future. Tr. at 29 ("[H]ere's the point.  I'm going to do this because I want you to have a chance, but I want you to take advantage of it and not blow it the way you did the last time I gave you a chance.  Understand?").

     The Court made clear that unless the BOP's calculation of the undischarged term would be greater than 11 months, Mr. Thompson's release would occur at the moment the BOP's calculation was received:  "The calculation is that the sentence that I impose is to run concurrently with any other federal sentence. **The undischarged part of the original seventy-eight months will be calculated along with this."**  Tr. at 29 (emphasis added).

---

[2]  The transcript is attached as Exhibit A.  For reasons of Mr. Thompson's personal safety concerns, I have redacted certain portions of his sentencing submission unrelated to this application.  *See* Fed. R. Crim. P. 49.1(d); 49.1(f).  If the Court wishes that I submit an unredacted copy under seal, I will certainly do so.

[3]  Mr. Toosi explained that Mr. Thompson escaped a residential correctional center four months before he escaped, and he anticipated the BOP to revoke his good time of two months, amounting to six more months of prison.  Tr. at 28.

The Honorable Nicholas G. Garaufis
February 8, 2011
Page 3

      On Monday, Mr. Thompson reported to me that he received a package from the Bureau of Prisons containing the calculation of his undischarged term, which would cause him to be released in July 2011. This morning, my colleague Kimberly Yuhas and I, contacted Henry J. Sadowski, Esq., Northeast Regional Counsel, Federal Bureau of Prisons. Mr. Sadowski said that he had reviewed Mr. Thompson's file as well as the transcript of the January 13, 2011 sentencing hearing. Mr. Sadowski explained that although Your Honor ordered Mr. Thompson's sentence to run *concurrent* with any remaining undischarged term, under the BOP guidelines a concurrent sentence cannot commence prior to the date of its imposition. Since Mr. Thompson's sentence on the instant charge was not imposed until January 2011, the BOP, under its rules, could not retroactively run the escape charge concurrently with Mr. Thompson's undischarged term. Thus, the BOP gave Mr. Thompson credit for time served on his eleven-month sentence on the instant offense commencing August 14, 2011. At sentencing, everyone appeared to have assumed that Mr. Thompson would get credit on his escape sentence from February 16, 2010 through approximately August 25, 2010, and that by running the sentences concurrently, Mr. Thompson would also be credited for his undischarged term during the same period. It turns out that was not the case. Thus, according to the BOP, Mr. Thompson has only served over five months of his eleven months sentence, leaving him six more months to spend in prison. That result plainly is not what the Court intended in imposing its concurrent sentence.

      We therefore request that the Court correct Mr. Thompson's sentence to effect its intention to have Mr. Thompson released shortly after the sentence was imposed. Accordingly, we request that the Court sentence Mr. Thompson five months and approximately twenty days -- the approximate time he has served in the MDC since August 14, 2010 -- to effect his immediate release.

The Honorable Nicholas G. Garaufis
February 8, 2011
Page 4


      I have communicated my intention to bring this application, and the grounds supporting it, by e-mail to Mr. Toosi today, in an effort to ask the government to consent to this application.  As of this filing, I have not received a response.[4]

Respectfully Submitted,

/S/ Eric M. Creizman

Eric M. Creizman (EC-7684)
Kimberly A. Yuhas (KY-2450)



EMC/kay

cc: Amir Toosi, Esq.
    Assistant United States Attorney (by ECF and E-Mail)

---

[4] Mr. Thompson also reported on Monday that he heard that there are plans to transport him out of the MDC to another prison.  As he requested at sentencing, Mr. Thompson asks that he not be moved out of the MDC because of concerns for his personal safety, a request the Court recommended that the BOP grant.  Tr. at 27 ("I recommend that whatever is left on the defendant's prison sentence be served in the MDC.  I don't think there's that much left.").  At the very least, Mr. Thompson should remain in custody at the MDC until this application is resolved.