# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Eric M. Creizman
Direct: 212.351.4021
Fax: 212.351.6221
ECreizman@gibsondunn.com

Client: T 20303-00014

**Via ECF Filing**
**(with Courtesy Copy to the Court by Federal Express)**

March 14, 2011

The Honorable Nicholas G. Garaufis
United States District Court Judge
United States District Court
for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: <u>United States v. Mark Thompson, 10-CR-687 (NGG) (E.D.N.Y.)</u>

Dear Judge Garaufis:

    I represent Mark Thompson as his court-appointed counsel in the above-referenced matter. We respectfully submit this letter in reply to the government's letter dated March 3, 2011 ("Gov't Letter"), opposing Mr. Thompson's motion to correct his January 13, 2011 sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure, 18 U.S.C. § 2255, and by writ of error *coram nobis*.[1]

    The government misapprehends the gravamen of Mr. Thompson's application by asserting that his "request for resentencing is based *entirely* on the Court's stated desire that the defendant be released from custody prior to July 2011." Gov't Letter at 6 (emphasis added). In fact, Mr. Thompson has made crystal clear that his request for a corrected sentence is based on the fact that the Court relied on inaccurate information presented to it in imposing sentence. Letter from Eric Creizman to The Honorable Nicholas G. Garaufis, dated Feb. 8, 2011. Here, Mr. Toossi made representations to the Court apparently based on inaccurate information conveyed to him by the Federal Bureau of Prisons. *See* 1/13/11 Tr. (Ex. A) at 6, 7, 19, 20; *see also* 12/21/10 Tr. before Judge Amon (Ex. B) at 24-25 ("I spoke with Adam Johnson, who's in the legal department at the Bureau of Prisons, and he consulted with Hank Sadowski, who is the regional director of the BOP for the northeast.").

    Specifically, Mr. Toossi represented that Mr. Thompson would receive full credit for the Court's 11-month sentence on his escape charge retroactively from February 2010, when Mr. Thompson had completed his 90-day sentence for state charges. Further, he represented

---

[1] In its opposition, the government requests that Mr. Thompson's motion "be deemed a motion pursuant to 28 U.S.C. § 2255." Gov't Letter at 5 n.1, 6. We do not oppose that request.

that the sentence for his conviction for escape could be run either consecutively or concurrently with the undischarged term of six months on his previous sentence for possession with the intent to distribute cocaine.[2] *See* 1/13/11 Tr. at 19-20. Those representations were false and misleading because, unbeknownst to the Court, *no matter* whether the Court imposed concurrent or consecutive sentences, the Bureau of Prisons would run the sentences consecutively. The Court's misunderstanding of that fact was only reinforced by the government's vigorous argument for a consecutive sentence, as if the Court's decision on this question would make a difference to the BOP's sentencing calculation.

These inaccurate representations directly affected the Court's imposition of sentence and the defense's sentencing arguments.[3] Indeed, the government concedes that in imposing concurrent sentences, the Court intended that Mr. Thompson would be released from the custody of the Bureau of Prisons earlier than July 2011. *See* Gov't Letter at 3 ("The Court then modified its sentence so that it would run <u>concurrently</u> with the undischarged portion of the 2005 sentence. In so doing, the Court believed that by ordering the sentences to run concurrently, the defendant's release date would be earlier than July 2011") (emphasis in original). Because the Bureau of Prisons' sentencing calculation practices were inaccurately described to the Court, and the Court was not adequately informed of its actual practices, the Court's sentence did not have the desired impact on Mr. Thompson's release date. To the contrary, Mr. Thompson's release date is now July13, 2011, precisely the release date that the government sought at sentencing (*see* 1/13/11 Tr. at 28), and not the date the Court intended Mr. Thompson to be released. *See* 1/13 Tr. at 27 ("I don't want him released in July. I thought it was another couple of months. He should get credit. He needs to get credit. He should get credit for the six months past the 90 days, right, and then for the five months --"); *see also id.* at 29 ("I'm going to change. I'm going to sentence him concurrently and not consecutively to the eleven months, all right, then you figure it out.").

---

[2] Although Mr. Thompson escaped from the halfway house with four months left on his 78-month sentence, Mr. Toossi represented that per the Bureau of Prisons' calculations, it would revoke two months of his good time credit, resulting in an undischarged term of six months. *See* 1/13/11 Tr. at 6.

[3] The defense does not claim or intend to suggest that either Mr. Toossi or the Bureau of Prisons *intentionally* misrepresented the relevant BOP practices to the Court. "From the perspective of what process is due [a] defendant under the Fifth Amendment, however, the distinction between a mistake and a lie is of little moment." *United States v. Hollenbeck*, 932 F. Supp. 53, 59 (N.D.N.Y. 1996).

Due process requires that a defendant not be sentenced "based on materially false information" or "a material misapprehension of fact." *Torres v. United States*, 140 F.3d 392, 404 (2d Cir. 1998); *see also United States v. Malcolm*, 432 F.2d 809, 816 (2d Cir. 1970) ("[M]aterial false assumptions as to any facts relevant to sentencing, renders the entire sentencing procedure invalid as a violation of due process."); *Monahan v. Winn*, 276 F. Supp. 2d 196 (D. Mass. 2003) ("[T]he law does recognize a due process right not to be sentenced on false information") (*citing Roberts v. United States*, 445 U.S. 552 (1980)).[4] Judge Johnson's recent opinion in *Darden v. Bureau of Prisons*, 707 F. Supp. 2d 363 (E.D.N.Y. 2010), is instructive. In that case, the defendant, Joel Darden, pled guilty in the U.S. District Court for the Middle District of Florida ("MDF") to negotiating counterfeit checks. *Id.* at 365. While on pretrial release, Mr. Darden fled home detention and a warrant was issued for his arrest. *Id.* Five months later, Mr. Darden was found and arrested on a warrant in the EDNY, and was also indicted in the EDNY for being a felon in possession of a weapon at the time of his arrest. *Id.* After Mr. Darden was transferred to the MDF, he pled guilty to the counterfeiting charge and was sentenced to time served. *Id.* At the time of his sentencing, Mr. Darden had been in custody for 63 months. *Id.* Mr. Darden later returned to New York and received a sentence of 120 months on the felon-in-possession charge. *Id.*

Over three years after the EDNY sentence was imposed, Mr. Darden filed a motion under Section 28 U.S.C. § 2255, arguing that he should have received credit for his prior custody on the Middle District of Florida sentence towards his EDNY sentence. *Id.* at 366. The Bureau of Prisons determined that it was unable to grant Mr. Darden prior custody credit because he had been sentenced to "time served" instead of a specific time. *Id.* After the MDF amended its judgment to provide Mr. Darden prior custody credit, the BOP made

---

[4] A court's actual reliance on erroneous information need not be demonstrated for a sentence to be unconstitutional so long as its reliance on the erroneous information was "quite probable." *See McGee v. United States*, 462, F.2d 243, 246 (2d Cir. 1972); *United States v. Robin*, 545 F.2d 775, 779 n.12 (2d Cir. 1976). Here, the record demonstrates more than a mere probability that the Court relied on the erroneous information that Mr. Thompson's sentences could be run concurrently under the BOP's calculation practices. Indeed, the Court changed its imposition of consecutive sentences to concurrent sentences specifically to avoid a release date of July 2011, which, according to the government, would be the release date if the sentences were run consecutively. *See* 1/13 Tr. at 20, 27. By arguing that the sentences should run consecutively rather than concurrently, the government misled the Court into believing that there would be a difference under the BOP's sentencing calculation depending on whether the Court ordered the sentences to run concurrently or consecutively. In fact, there would not be any difference and the sentences would be run consecutively regardless of any sentence imposed by the Court.

adjustments to his sentence, resulting in only some credit for prior custody that Mr. Darden had requested. *Id.* Judge Johnson then held further hearings to determine whether an additional sentence reduction was warranted. As here, the BOP contended that because the EDNY had not yet imposed its sentence when the MDF had sentenced Mr. Darden, there was no sentence for the MDF sentence to run concurrent to; the BOP therefore argued the sentences must be run consecutively and no further reductions were warranted. *Id.*[5] Judge Johnson nonetheless granted Mr. Darden's § 2255 motion because at the time of Mr. Darden's re-sentencing, the EDNY had incorrectly believed that Mr. Darden's MDF sentence had been discharged, and thus could not be run concurrently with his EDNY sentence. "Had this Court been aware that the Florida sentence, was, in fact, undischarged, it would [have] specified concurrency or even have exercised its discretion under U.S.S.G. 5G1.3 and applied a downward departure to effectuate [its] intent." *Id.* at 368. Judge Johnson ruled that the "distortion of the sentencing proceeding caused by the error was fundamental" and violated due process. *Id.* at 369. Accordingly, the Court amended Mr. Darden's sentence to effectuate the intent of the sentencing judges in the MDF and EDNY. *Id.*

The Second Circuit reached a similar conclusion based on the same reasoning in *King v. Hoke*, 825 F. 2d 720 (2d Cir. 1987). In *King*, the defendant appealed from a judgment denying his petition for a writ of habeas corpus challenging a sentence imposed by the New York Supreme Court on his felony murder conviction. *Id.* at 721. The sentencing judge had imposed a sentence of 25 years-to-life with the expectation that the defendant would be eligible for parole after he served two-thirds of the minimum sentence imposed. *Id.* at 722. After the defendant learned in prison that the statute the Court relied upon had been repealed at the time he was sentenced, and, thus, he would have to serve the minimum 25 year-sentence, the defendant brought a habeas corpus motion. *Id.* The Second Circuit reversed the district court's denial of habeas corpus because the district's court's erroneous understanding of the law resulted in a "constitutional defect" in the defendant's sentencing. *Id.* at 724.

Numerous courts in other circuits repeatedly have held that a sentence based on the kind of materially inaccurate information relied upon by this Court is constitutionally invalid. For example, in *Iacaboni v. United States*, 251 F. Supp. 2d 1015 (D. Mass. 2003), the court vacated its earlier sentence because the sentence was based on the Bureau of

---

[5] Judge Johnson noted that while the BOP's calculation of Mr. Darden's sentence was technically correct, its "stubborn refusal to allocate . . . the credit in a fashion that complies with the intention of the sentencing judges is morally questionable." *Id.* at 366. "As Feoude said 'a man can do what he ought to do; and when he says he cannot, it is because he will not.'" *Id.* at n. 2.

The Honorable Nicholas G. Garaufis
March 14, 2011
Page 5

Prisons' longstanding policy that defendant would be eligible for community confinement when, in fact the BOP later changed its policy:

> Here, I made an "objectively ascertainable error" in imposing these sentences, as a result of what the BOP now tells me was a mistaken factual assumption. This assumption was that all three of these petitioners would be eligible for possible designation to a community confinement facility. The offenders were all placed in a much worse position than they would have been in had the sentencing proceeding not been shrouded in the fog of this supposed error. Certainly, had defendants and their attorneys known that, in fact, *no possibility* existed that these petitioners would be designated to community confinement, their arguments at the sentencings would have been quite different. The distortion of the sentencing proceeding caused by the error was fundamental. Without the mistaken assumption I had been led into, the substantive arguments before me would have been different, and there is every likelihood the sentences would have been different. Few fact patterns could offer a clearer violation of due process. .

*Id*. at 1042-43 (emphasis added). *See also*, *Pearson v. United States*, 265 F. Supp.2d 973, (E.D. Wisc. 2003) (vacating earlier sentence and ordering resentencing where court refused to depart from guidelines sentence because it received *specific assurances* by the BOP, consistent with the BOP's longstanding policy, that defendant would be eligible for a sentence of community confinement without the need for a departure; in fact, that information was false, and "[t]he decision would likely have been different had I known petitioner would be sent to prison"); *United States v. Eakman*, 378 F.3d 294, 300 (3d Cir. 2004) (remanding for hearing on whether court relied on its misunderstanding of the law in imposing sentence). The reasoning in these cases should obtain here.

The government misguidedly relies upon the Supreme Court's decision in *United States v. Addonizio*, 442 U.S. 178 (1979). The relevant facts of that case, however, are readily distinguishable from the matters at issue here. In *Addonizio*, the district court imposed a sentence under the incorrect assumption that the Parole Commission would exercise its discretion to release the defendant after he served a third of his ten-year sentence. *Id*. The court understood at the time of sentencing, however, that the Parole Commission could exercise its discretion in a different manner, and, in fact, the Parole Commission did exercise its discretion in a manner that frustrated the intentions of the court. The Supreme Court upheld the sentence, explaining that the sentencing judge had made an incorrect *prediction* on how the Parole Commission would exercise its discretion, and the defendant could not prevail where his argument was "based not on any objectively ascertainable error but on the frustration of the subjective intent of the sentencing judge." *Id.* at 187.

*Addonizio* is inapposite. Here, the Court's decision to order that Mr. Thompson's sentences run concurrently was based on an "objectively ascertainable error," namely, that by

running the sentences concurrently, Mr. Thompson would be released from prison well before July 2011.  Thus, here, unlike the court in *Addonizio*, the Court did not impose sentence based on a prediction of what the Bureau of Prisons would do, but rather on a misunderstanding of the BOP's sentencing calculation practices.  1/13/2011 Tr. at 27-29.  Numerous courts have distinguished *Addonizio* in the same fashion in similar circumstances:

- *King*, 825 F.3d at 725 (Second Circuit distinguishing *Addonizio* on the grounds that unlike *Addonizio*, the sentencing judge had not made an incorrect prediction of how the Parole Commission would act, but rather made an "objectively ascertainable error . . . about King's minimum statutory parole eligibility date").

- *Darden*, 707 F. Supp. 2d at 368 ("In *Addonizio*, the sentencing judge made an incorrect prediction of how the Parole Commission would exercise its discretion. . . . In this case, the Court made an 'objectively ascertainable error' in interpreting the sentencing options available to it.").

- *Cutler v. United States*, 241 F. Supp. 2d 19, 26 (D.D.C. 2003) (distinguishing *Addonizio* on the grounds that "[t]he Court did not have merely a hope or expectation that petitioner would serve her sentence in a halfway house . . . Instead, *in deciding what sentence to impose*, the Court relied on years of consistent practice, as well as representations that the BOP would that BOP would honor the Court's placement recommendation.") (emphasis in original).

- *Pearson*, 265 F. Supp. 2d at 980 (distinguishing *Addonizio* on the grounds that "there was no mistaken prediction as to how the BOP would exercise its discretion in this case but rather an affirmative misrepresentation by the BOP that petitioner would be placed in [community confinement]").

- *Hollenback*, 932 F. Supp. at 57, 58 ("The weight of authority endorses the theory that a petitioner who can demonstrate that the court relied on materially false information at sentencing is entitled to collateral relief. . . . There was no indication [in *Addonizio*] that the sentencing judge acted on misinformation at the time of sentencing; rather he relied on accurate information that subsequently changed.")

- *Eakman*, 378 F.3d at 300 ("We agree with *King* and hold that *Addonizio* does not control where, as here, a prisoner alleges that the district court made an error of law that can be ascertained from the record.").[6]

---

[6] As evidenced by the cases listed above, the government erroneously contends that the Court's sentence based on erroneous information "does not support a collateral attack on

[Footnote continued on next page]

The Honorable Nicholas G. Garaufis
March 14, 2011
Page 7

     Here, the transcripts of the sentencing hearings plainly establish that the Court imposed sentence based on inaccurate information. Accordingly, under Fed. R. Crim. P. 35, 18 U.S.C. § 2255, and/or the doctrine of *coram nobis*, the Court should amend its Judgment against Mr. Thompson on his escape charge from 11 months imprisonment to time served.[7]

Respectfully Submitted,

/S/ Eric M. Creizman

Eric M. Creizman (EC-7684)
Kimberly A. Yuhas (KY-2450)

cc: Amir Toossi, Esq.
    Assistant United States Attorney (by ECF and E-Mail)

---

[Footnote continued from previous page]
    [Mr. Thompson's] sentence" (Gov't Letter at 6). The government cites no authority for that position, and its argument is directly contradicted by the authority listed above.

[7] The government's effort to preclude Mr. Thompson's motion as untimely under Rule 35(a) is both unfair and misleading. Gov't Letter at 5. The BOP did not calculate Mr. Thompson's sentence until well after seven days following the entry of judgment, and thus Mr. Thompson could not have known of the sentencing defect at issue during the seven-day period set forth in Rule 35(a). When Mr. Thompson ultimately learned on or about February 7, 2011 that the Bureau of Prisons had calculated a July 2011 release date, his motion was filed promptly the following day. *See* Creizman 2/8/2011 Letter at 1. *Cf. King*, 825 at 723 (excusing defendant for purportedly late filing where "[u]pon first learning that he would not be eligible for parole after serving two-thirds of his minimum sentence, as the trial judge had stated . . . King promptly initiated proceedings for relief").

    Moreover, the government's notion that Mr. Thompson's purportedly untimely filing deprives this Court of jurisdiction to correct his sentence should be rejected. "Suffice it to say that the argument that this court is without power to remedy a sentence it erroneously imposed in reliance on misinformation, whether innocent or not, originating from the executive branch of government cannot be sustained." *Hollenbeck*, 932 at 58-59.