UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

UNITED STATES OF AMERICA

**MEMORANDUM & ORDER**

-against-

**10-CR-687 (NGG)**

MARK THOMPSON,

Defendant.
--------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Mark Thompson ("Thompson") moves for resentencing under 28 U.S.C.

§ 2255. (Def. Mem. (Docket Entry # 29).)[1] For the reasons set forth below, the court defers

decision on Thompson's § 2555 petition and grants Thompson leave to amend his petition to

seek habeas corpus relief under 28 U.S.C. § 2241.

I.      **BACKGROUND**

In October 2005, Thompson was sentenced by this court to ninety-seven months'

imprisonment on a narcotics charge. (Compl. (Docket Entry # 1) ¶ 1.) The court later reduced

Thompson's sentence to seventy-eight months (the "2005 sentence"). (Id.) Thompson's

sentence was scheduled to end on October 24, 2009. (Id. ¶ 2.) In April 2009, Thompson was

transferred from a federal correctional institution to a halfway house in Brooklyn, New York,

where he was scheduled to remain until the end of his sentence. (Id. ¶¶ 2, 3.) Not long after that,

on June 7, 2009—that is, with less than five months remaining until his scheduled release—

Thompson signed out of the halfway house on a religious pass and never returned. (Id. ¶¶ 3, 4.)

---

[1] Thompson's motion was originally brought under Federal Rule of Criminal Procedure 35 or,
alternatively, as a motion for a writ of error coram nobis. (Def. Mem.) However, the Government
requested that Thompson's motion be deemed a motion pursuant to § 2255 (Gov. Resp. (Docket Entry #
32) at 5 n.1) and Thompson did not oppose that request (Def. Reply (Docket Entry # 33) at 1 n.1).

Thompson remained at large until November 18, 2009, when he was arrested by the New York Police Department for reckless endangerment, after an incident in which he led police officers on a high-speed chase. (Transcript of January 2011 sentencing proceeding ("Tr.") (Docket Entry # 33-1) at 3; Gov. Resp. at 2.) From the time of his November 2009 arrest until August 25, 2010—approximately nine months—Thompson was jailed on Rikers Island ("Rikers"), a New York City jail. (Tr. at 4; Gov. Resp. at 2.) On August 25, 2010, Thompson was "writted over" from Rikers into federal custody.[2] (Tr. at 4; Gov. Resp. at 2.) Approximately three months later, in November 2010, Thompson, having pleaded guilty to a state misdemeanor charge of reckless endangerment, was sentenced on the state charge. (Tr. at 4; Gov. Resp. at 2.) Even though Thompson had already spent nine months at Rikers, he was retroactively sentenced—due to his cooperation with the Staten Island District Attorney's Office—to ninety days' imprisonment. (Tr. at 4, 10; Gov. Resp. at 2.) In other words, Thompson spent approximately six months at Rikers in excess of his state sentence.

In September 2010, Thompson was federally indicted, under 18 U.S.C. § 751(a), for having escaped from the halfway house. (Indictment (Docket Entry # 7).) On November 4, 2010, he pleaded guilty on that charge (Docket Entry # 17) and, on January 21, 2011, he was sentenced by this court (Docket Entry # 26).

In determining what sentence to impose for the escape, the court took into account the time remaining on Thompson's 2005 sentence. When Thompson escaped, he had over four months remaining on that sentence. However, because of the escape, he stood to lose the "good-

---

[2] Counsel for the Government used the phrase "writted over" at the sentencing hearing, presumably meaning that Thompson was transferred from state into federal custody on a writ of habeas corpus ad prosequendum.

time" credit he had accrued.[3] (Tr. at 6; Gov. Resp. at 1-2.) As a result, counsel for the Government estimated, the BOP would "probably" decide that Thompson was required to serve six or seven more months on the 2005 sentence. (Tr. at 6, 20.) As counsel for the Government made clear, at the time of the January 2011 sentencing, "[t]he time remaining on his [2005] sentence ha[d] *not yet been calculated by the BOP*" and, in any event, Thompson still "owe[d] time." (Id. at 6, 7 (emphasis added).)

The court proceeded to sentence Thompson to eleven months' imprisonment and three years' supervised release on the escape charge. (Id. at 25.) The court ordered that this eleven-month sentence run concurrently with the undischarged portion of Thompson's 2005 sentence. (Id. at 27-29.) The Judgment reflected that Thompson was sentenced to "eleven (11) months [] on the single-count indictment to run concurrently to any undischarged term of imprisonment." (Docket Entry # 27.)

The BOP, in calculating Thompson's sentence, ignored the court's order that the sentences run concurrently. According to the Government, the BOP calculated that there were six months left on the 2005 sentence. (Gov. Resp. at 3-4.) The BOP credited the six months Thompson spent at Rikers subsequent to the expiration of his state sentence toward those six months. (Id.) As a result, the BOP calculated, Thompson's 2005 sentence terminated on August 13, 2010. (Id.) Therefore, according to the BOP—and contrary to the Government's assertions at the sentencing proceeding—there was no undischarged portion of the 2005 sentence left when Thompson was sentenced in January 2011. (Id.) The BOP then credited, against Thompson's sentence for escape, the five months Thompson spent in detention after he was "writted" from Rikers into federal custody. (Id.) Thus, according to the BOP, there were still six months left to

---

[3] See 18 U.S.C. § 3624(b)(1) (governing applicability of "good time" credit).

serve on the eleven-month escape sentence, resulting in a July 13, 2011 release date.  (Id.)  As the Government puts it, "as a practical matter," the court's decision to impose concurrent sentences "had no effect on the defendant's release date."  (Gov. Resp. at 3.)

## II.    DISCUSSION

Thompson moves for relief under 28 U.S.C. § 2255 based on what he characterizes as the court's misunderstanding of the BOP's procedures in calculating sentences.  (Def. Mem.; Def. Reply.)  Thompson is correct that, where it is "quite probable" that a district court relied upon "material false assumptions as to any facts relevant to sentencing," the sentence is "invalid as a matter of due process."  King v. Hoke, 825 F.2d 720, 724 (2d Cir. 1987).  Such mistaken assumptions by the sentencing court can be the basis for relief under § 2255.  See, e.g., Darden v. Bureau of Prisons, 707 F. Supp. 2d 363 (E.D.N.Y. 2010).

However, upon a preliminary review of the applicable law, the court does not believe that it was in fact mistaken in its assumptions in sentencing Thompson.  Instead, it appears to the court that it is the BOP that misapplied the law.

The BOP is empowered to calculate the start and end dates of sentences imposed by the district courts.  See United States v. Wilson, 503 U.S. 329, 334 (1992).  Two statutes guide the BOP's calculation.  The first is 18 U.S.C. § 3584, which reads in relevant part:

> (a) Imposition of Concurrent or Consecutive Terms.—If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively . . . .
>
> (c) Treatment of Multiple Sentence as an Aggregate.—Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment.

The second statute is 18 U.S.C. § 3585, which reads:

(a) Commencement of Sentence.—A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

(b) Credit for Prior Custody.—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

> (1) as a result of the offense for which the sentence was imposed; or

> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

First, it is clear that, under § 3584(a), the court had the authority to order that Thompson's sentence for escape run concurrently with the "undischarged term of imprisonment" remaining in the 2005 sentence. See Shelvy v. Whitfield, 718 F.2d 441, 442 (D.C. Cir. 1983) ("[A] second sentence ordered to run concurrently with a sentence earlier imposed runs with *the remainder* of the earlier sentence.") (emphasis in original). Moreover, it is clear, in light of the facts set forth above, that at the time of the January 2011 sentencing, such an "undischarged term of imprisonment" remained. As counsel for the Government made clear, the BOP had not yet determined—as it later would—that Thompson had discharged his 2005 sentence by spending six extra months at Rikers. (Tr. at 6.) Indeed, according to counsel for the Government—the representative of the Government and its agencies, including the BOP—Thompson still "owe[d] time" on the 2005 sentencing. (Id. at 7.) Nor is the court aware of any law or rule that would have mandated that, at the time of the January 2011 sentencing, Thompson's 2005 sentence should necessarily have been considered discharged.[4]

_____

[4] Indeed, there was no reason for the court to assume that, by spending time at Rikers, a New York City jail, Thompson was somehow automatically discharging his unfinished 2005 sentence. Nor was there any reason to make such an assumption as to the five months Thompson spent in federal custody after being transferred from Rikers into federal custody on a writ of habeas corpus ad prosequendum. A state

5

In sum, at the time of the 2011 sentencing, undischarged time remained on the 2005 sentence, and the court's order that this undischarged time run concurrently with the eleven-month escape sentence was authorized by § 3584(a).  See United States v. Donoso, 521 F.3d 144, 149 (2d Cir. 2008) (applicability of § 3584 determined as of the time of sentencing); United States v. Burgos, 2 F. Appx. 134, 136 n.1 (2d Cir. 2001) ("The correct time at which to ascertain whether a defendant is 'already subject to an undischarged term of imprisonment' for purposes of 18 U.S.C. § 3584(a) . . . is the moment the federal judge imposes the federal sentence.").  The BOP did not have the authority to simply ignore the court's order that the sentences run concurrently.  If the Government believed the order was unlawful, it could have appealed.

In the absence of such an appeal, the BOP should have calculated Thompson's sentence as follows.  After calculating the amount of time remaining on the 2005 sentence, the BOP should have heeded the mandate of § 3584(c) and aggregated that undischarged time with the escape sentence.  Section § 3584(c) ("Multiple terms of imprisonment ordered to run . . . concurrently *shall* be treated for administrative purposes as a single, aggregate term of imprisonment.") (emphasis added).  Given the BOP's determination that six months remained on the 2005 sentence, this aggregate sentence would have added up to eleven months.

The BOP should then have calculated the amount of credit to which Thompson was due, under § 3585(b).  Since the credit would have applied to a single sentencing unit under § 3584(c), there would have been no question of violating § 3585(b)'s bar on crediting two

---

prisoner transferred into federal custody on such a writ is considered to still be in state custody, and to be "on loan" from the state.  See Delima v. United States, No. 99-2247, 213 F.3d 625, 2000 WL 534248, at *1 (2d Cir. May 2, 2000) (unpublished opinion) (citing In re Liberatore, 574 F.2d 78, 89 (2d Cir. 1978)); see also United States v. Fermin, 252 F.3d 102, 108 n.10 (2d Cir. 2001) ("[A] defendant held at a federal detention facility is not 'in custody' for the purposes of § 3585(a) when he is produced through a writ of habeas corpus ad prosequendum."); United States v. Ravello, No. 02-CR-1327 (CPS), 2008 WL 2097395, at *3 (E.D.N.Y.  May 19, 2008) ("[B]ecause defendant was in federal custody pursuant to a writ of habeas corpus *ad prosequendum*, New York retained primary jurisdiction over defendant.").

separate sentences with one period of prior detention. Since Thompson, as the BOP in fact determined, was entitled to eleven months' credit, he would have been entitled to immediate release.[5] See Mezheritsky v. Duncan, No. 08-CV-641 (TUC) (HCE), 2010 WL 3834657, at *6 (D. Ariz. May 25, 2010) ("Consistent with the statutory scheme . . . the BOP computed Petitioner's aggregate sentence and gave credit on the total aggregation of the First and Second Sentences . . . ."); Holmes v. Stansberry, No. 09-CV-165 (JRS), 2010 WL 174106 (E.D. Va. Jan 15, 2010) (upholding, on a habeas petition, the BOP's aggregation of a new sentence with the undischarged portion of a prior sentence and its *subsequent* application of credit to that aggregated sentence).

BOP sentencing calculations are entitled to "some deference." See Reno v. Koray, 515 U.S. 50, 60-61 (1995).[6] However, even applying such deference, it is the court's preliminary view, reached without the aid of briefing by the parties, that the BOP erred. District courts may reverse erroneous BOP sentencing calculations upon petitions for habeas corpus relief under 28 U.S.C. § 2241. See Levine v. Apker, 455 F.3d 71, 78 (2d Cir. 2006) ("A challenge to the *execution* of a sentence—in contrast to the *imposition* of a sentence—is properly filed pursuant to § 2241.") (emphasis in original); Chambers v. United States, 106 F.3d 472 (2d Cir.1997) (an action challenging the BOP's calculation of a sentence is properly brought under § 2241). Thompson is therefore given leave to amend his petition to seek relief under § 2241.

Thompson is currently imprisoned at the Metropolitan Detention Center ("MDC"), within the jurisdiction of this court, such that the court may hear such a § 2241 claim. Section 2241(d). However, Thompson has not named as a respondent the warden of the MDC, as required. See

---

[5] Of course, Thompson would not have been a completely free man at this point, given the supervised release portion of his sentences.

[6] The parties, in any subsequent submissions, should clarify what they believe to be the correct degree of deference.

Rumsfeld v. Padilla, 542 U.S. 426, 437 (2004). In amending the petition, Thompson's counsel should add as a respondent the warden of the MDC. There is no need for additional service of process on the warden. See Fed. R. Civ. P. 15(c).

Furthermore, though a prisoner normally must exhaust administrative remedies before challenging the calculation of his sentence under § 2241, no such exhaustion is necessary here, since Thompson may be entitled to immediate release and, in any event, has only months left to go on his sentence. See Beharry v. Ashcroft, 329 F.3d 51, 58 (2d Cir. 2003) (exhaustion may not be required where "irreparable injury may occur without immediate juridical relief"); Pimentel v. Gonzalez, 367 F. Supp. 2d 365, 371 (E.D.N.Y. 2005) ("Here, not only would an administrative appeal be futile, but without immediate relief by this court, Pimentel could suffer irreparable harm. . . . Were Pimentel required to pursue administrative remedies prior to bringing this action, he would likely be done serving much, if not all of his entire sentence such that his request would become moot."); id. at 371 n.6 (describing months-long process of BOP administrative review).

## III.    CONCLUSION

For the aforementioned reasons, the court defers decision on Thompson's § 2255 petition. Thompson is granted leave to amend and to move for relief under § 2241. Thompson, should he choose to pursue this path, shall do so within seven (7) days of the issuance of this order. Upon such amendment, the court will post a briefing schedule on the Electronic Case Filing system.

SO ORDERED.

                                                              /S/ Nicholas G. Garaufis
Dated: Brooklyn, New York                        NICHOLAS G. GARAUFIS
       April 11, 2011                                    United States District Judge