UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
MARK THOMPSON, :
:
              Petitioner, :  Criminal Docket No.
:  10-CR-687 (NGG)
  - against - :
:
DUKE TERRELL, WARDEN, METROPOLITAN :  ECF Filing
DETENTION CENTER in BROOKLYN, NEW YORK, :
:
              Respondent. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# PETITION OF MARK THOMPSON FOR HABEAS CORPUS RELIEF

# UNDER SECTION 28 U.S.C. 2241

Eric M. Creizman (EC-7684)
Appointed Counsel for Mark Thompson

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Dated: New York, New York
       April 16, 2011

# PRELIMINARY STATEMENT

Mark Thompson is a federal prisoner at the Metropolitan Detention Center in Brooklyn, New York ("MDC Brooklyn"). His statutory and Due Process rights are being violated by the Bureau of Prisons' failure, in calculating Mr. Thompson's sentence, to obey the Court's order that Mr. Thompson's sentence on his conviction for escaping a halfway house be run concurrently with the undischarged portion of the sentence he was serving at the time of his escape. Instead, ignoring 18 U.S.C. §§ 3584 and 3585, the BOP ran the two sentences consecutively. Had the BOP calculated Mr. Thompson' sentences as the Court directed and in accordance with the relevant statutes, Mr. Thompson would have been released in January 2011. The BOP's calculation should not be allowed to stand. Pursuant to the Court's Order dated April 11, 2011, we respectfully request the Court grant this petition for *habeas corpus* under 29 U.S.C. § 2241 and order Mr. Thompson's immediate release from the custody of the Bureau of Prisons.

# JURISDICTION

1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 2241 because Mr. Thompson's term in federal custody is being determined in violation of the Constitution and the laws of the United States.[1]

2.    Mr. Thompson invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1331 in that the action arises out of the Constitution and laws of the United States and seeks corrective

---

[1] In the alternative, if the Court does not grant this petition, Mr. Thompson continues to seek relief pursuant to 28 U.S.C. § 2255 for the reasons expressed in Mr. Thompson's letters to this Court, filed February 23, 2011 and March 14, 2011. (Dkt # 29, 33). In its Memorandum and Order dated April 11, 2011, the Court stated that it would defer its decision on Mr. Thompson's §2255 petition.

action by officers and employees of the United States in their official capacity.

3. Mr. Thompson also invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1343(a)(4) in that he seeks to redress deprivation of rights guaranteed by both the Constitution and federal statutes.

**PARTIES**

4. Mr. Thompson is presently confined at MDC Brooklyn pursuant to the judgment of the United States District Court for the Eastern District of State.

5. Duke Terrell is the Warden of MDC Brooklyn and, through the BOP, an agency of the United States Department of Justice, is responsible for the Mr. Thompson's custody and calculation of his term of confinement.

**Statement of Facts**

6. In October 2005, Mr. Thompson was sentenced by this Court on a narcotics charge. After a reduction in his original sentence from ninety-seven to seventy-eight months (the "narcotics sentence"), Mr. Thompson was scheduled to be released on October 24, 2009. In April 2009, Mr. Thompson was transferred from a federal correctional institution to a halfway house in Brooklyn, New York, where he was scheduled to remain until the end of his sentence.

7. On June 7, 2009, with less than five months left on the narcotics sentence, Mr. Thompson signed out of the halfway house where he was serving the sentence's remainder on a religious pass, and never returned.

8. On September 28, 2009, Mr. Thompson encountered officers of the New York City Police Department and led them on a high speed chase. After successfully eluding the police on that occasion, Mr. Thompson was arrested at his parents' home on November 18, 2009 by the United States Marshal's Service and handed over to state custody, where he was charged

with a number of felony and misdemeanor offenses. PSR ¶¶ 42-43. Mr. Thompson remained at Rikers Island jail for approximately nine months. While in custody, Mr. Thompson cooperated with the Staten Island DA's Office. As a result of Mr. Thompson's cooperation, the Staten Island DA's Office agreed to drop all felony charges and permitted Mr. Thompson to plead guilty to a misdemeanor count of reckless endangerment in the second degree, with a 90-day prison sentence. As Mr. Thompson had served nine months in Riker's Island, the New York Supreme Court counted three of those nine months as time served. On August 25, 2010, he was transferred from Rikers to MDC Brooklyn, where he has been confined since.

9. On September 7, 2010, Mr. Thompson was indicted for his escape under 18 U.S.C. § 751(a). On November 4, 2010, Mr. Thompson pled guilty to escape pursuant to a plea agreement. Mr. Thompson was ultimately sentenced by The Honorable Nicholas G. Garaufis on that conviction on January 13, 2011. At issue on sentencing was Mr. Thompson's sentence for the escape charge as well as the undischarged term of his sentence on his prior narcotics conviction.

10. In determining what sentence to impose for Mr. Thompson's escape, the Court considered the undischarged portion of Mr. Thompson's sentence for the narcotics conviction. At the time of his escape, Mr. Thompson had approximately four months remaining on his narcotics sentence. The government, however, made clear to the court that Mr. Thompson's undischarged term had yet to be calculated because the Bureau of Prisons had to determine whether Mr. Thompson would lose any "good time" credit he had accrued prior to his escape. Indeed, the Government represented in open court that "[t]he time remaining on his [narcotics] sentence ha[d] *not yet been calculated by the BOP*" and that "my understanding from [the BOP]" was that Mr. Thompson's sentencing file would have to be sent to the BOP's Texas office, *before*

4

Mr. Thompson's sentence would be calculated. 1/14/2011 Tr. at 6, 7.

11.     The Court sentenced Mr. Thompson to eleven months' imprisonment and three years' supervised release on the escape charge, and further ordered that that eleven-month sentence be run concurrently with the undischarged portion of his escape sentence.  1/14/11 Tr. at 27-29.  The Judgment issued by the Court reflected that Mr. Thompson was sentenced to "eleven (11) months [] on the single-count indictment to run concurrently to any undischarged term of imprisonment."  (Dkt. #27).

12.     The BOP subsequently calculated the term of Mr. Thompson's undischarged sentence as six months and then applied that six-month term retroactively to the period he served at Riker's over and above the 90-month state sentence for reckless endangerment, from February - August 2011.  Rather than follow the Court's Judgment, the BOP chose not to retroactively apply the escape sentence to run from February -- concurrently with the undischarged term of the narcotics sentence -- but instead calculated the escape sentence to begin running *after* the undischarged sentence, thus calculating the escape sentence to run consecutively to the undischarged sentence.

13.     Had the BOP run both sentences concurrently from February 2010, as the Court ordered, Mr. Thompson would have been entitled to release in eleven months, in January 2011. By the BOP's calculation of consecutive sentences, Mr. Thompson's projected release date, as listed in the BOP's Inmate Locater website, is July 13, 2011, seven months after he should have been released.

**Argument**

14.     18 U.S.C. § 3584(a)-(c) provides that "if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run

5

concurrently" and "[m]ultiple terms of imprisonment ordered to run . . . concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment."

15. 18 U.S.C. § 3585(b) provides that, when it "has not been credited against another sentence," "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed[.]"

16. The BOP's failure to run concurrently the January 13 sentence with the undischarged term remaining in the October 2005 sentence is contrary to the plain language in 18 U.S.C. § 3584. Indeed, "a second sentence ordered to run concurrently with a sentence earlier imposed runs with *the remainder* of the earlier sentence." *Shelvy v. Whitfield*, 718 F.2d 441, 442 (D.C. Cir. 1983) (emphasis original).

17. Moreover, the Second Circuit has made clear that the applicability of § 3584 is determined at the time of sentencing and "whether the defendant is 'already subject to an undischarged term of imprisonment' for purposes of 18 U.S.C. § 3584(a) . . . is the moment the federal judge imposes the federal sentence." Thus the Court's sentence plainly was authorized under the statute. *United States v. Burgos*, 2 F. App'x 134, 136 n.1 (2d Cir. 2001) ("The correct time at which to ascertain whether a defendant is 'already subject to an undischarged term of imprisonment' for purposes of 18 U.S.C. § 3584(a) . . . is the moment the federal judge imposes the federal sentence"); *see also United States v. Donoso*, 521 F.3d 144, 149 (2d Cir. 2008) (applicability of Section 3584 determined as of the time of sentence).

18. The BOP's calculation of Mr. Thompson's sentence thus is contrary to the

unambiguous intent of Congress, which permits a sentence imposed to run concurrent to the remainder of an undischarged term on another sentence. *See* 18 U.S.C. § 3584; *see also Chevron U.S.A. v. Nat'l Res. Def. Council*, 467 U.S. 837, 842-43 (1984).

19. The BOP's calculation is entitled to "a level of deference below that required in *Chevron*." *Zucker v. Menifee*, No. 03-CV-10077 (RJH), 2004 WL 102779, at *4 (S.D.N.Y. Jan. 21, 2004). The *Chevron* standard provides that an administrative decision should be upheld as long as it is "reasonable". *Lopez v. Terrell*, 697 F. Supp. 2d 549, 557 (S.D.N.Y. 2010). By contrast, the level of deference applicable to BOP sentence calculations is whether the BOP's decision was "persuasive." *Id.* Applying that level of deference here, the BOP's determination is hardly persuasive given that it was contrary to the plain meaning of the statute. *Id.*

20. The exhaustion requirement for Section 2241 is prudential, not statutory, and may be excused at the Court's discretion. *Lopez*, 697 F. Supp. at 556. Here, Mr. Thompson's exhaustion requirement should be excused because he is entitled to immediate release and, in any event, has only months left outstanding on his sentence. *See Beharry v. Ashcroft*, 329 F.3d 51, 58 (2d Cir. 2003) (noting that administrative exhaustion may be unnecessary where "irreparable injury may occur without immediate judicial relief"). Indeed, if Mr. Thompson were required to pursue administrative exhaustion, the administrative process would likely continue through his currently scheduled release date in July 2011, which would undoubtedly lead to irreparable harm and render his petition moot. *See Pimentel v. Gonzalez*, 367 F. Supp.2d 365, 371 (E.D.N.Y. 2005) ("Here, not only would an administrative appeal be futile, but without immediate relief by this court, Pimentel could suffer irreparable harm. . . Were Pimentel required to pursue administrative remedies prior to bringing this action, he would likely be done serving much, if not all of his entire sentence such that his request would become moot.").

21. For all the reasons set forth in this petition, the conduct of the respondent and agents of the Bureau of Prisons in ignoring the Court's order in calculating Mr. Thompson's sentence deprives him of the rights conferred by 18 U.S.C. § 3584 and 18 U.S.C. § 3585, as well as the Due Process Clause of the Fifth Amendment.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Thompson respectfully requests that this Court:

(1) Grant the writ of habeas corpus; and

(2) Order that the BOP recalculate Mr. Thompson's projected release date reflecting this Court's Judgment by running his sentence for escape concurrent with the undischarged term of his narcotics, entitling Mr. Thompson to immediate release.

Dated: New York, New York
April 16, 2011

GIBSON, DUNN & CRUTCHER LLP

By: /S/ Eric M. Creizman
Eric M. Creizman [EC-7684]
Kimberly A. Yuhas [KY-2450]

200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for Mr. Thompson*